Bruce B. DAVIS, et al., Appellants

v.

LIBERTY MUTUAL INSURANCE COMPANY, et al.

No. 88–7080.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 23, 1989.
Decided April 7, 1989.

George J. Leibowitz, with whom George M. Newsome, Washington, D.C., was on the brief, for appellants.

Randell Hunt Norton, Washington, D.C., for appellee Northwest Sheet Metal, Inc.

John C. Lynch, with whom James C. Gregg, Washington, D.C., was on the brief, for appellee Liberty Mut. Ins. Co.

Before STARR, WILLIAMS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

Janet and Bruce Davis appeal from the District Court's dismissal of their amended complaint brought against Liberty Mutual Insurance Company and Northwest Sheet Metal Inc. (Mr. Davis' former employer) for damages flowing from non-payment of certain medical expenses associated with Mrs. Davis' pregnancy. We conclude that dismissal was warranted only in part; as to two claims, however, we are constrained to reverse and remand for further proceedings.

I

As an employee of Northwest Sheet Metal, Mr. Davis was covered under a group health insurance policy issued by Liberty Mutual. In August 1984, Mr. Davis voluntarily terminated his employment with Northwest. At the time, Janet Davis was in the midst of a complicated pregnancy, eventuating in late October 1984 in a Caesarian birth. Thereafter, Liberty Mutual refused to pay approximately $7000 of Janet's pregnancy-related medical expenses incurred after Bruce left Northwest's employ. The Davises subsequently brought a diversity action in federal district court for recovery of those expenses; in addition, the Davises sought recovery of damages stemming from the alleged failure of both Liberty Mutual and Northwest to supply accurate information about the policy and to process their claim in good faith.

The resulting litigation has been, in the apt phrase of the District Court, "tiresome and protracted." J.A. at 183. The Davises' first complaint, filed in October 1986, alleged violations of Maryland law and sought compensatory and punitive damages. No claim was mounted under the Employee Retirement Income Security Act

("ERISA"); 29 U.S.C. § 1001 *et seq.* (1982). In February 1987, the Davises filed an amended complaint seeking compensatory and punitive damages of $900,000. J.A. at 9–21. Like its precursor, the amended complaint sounded entirely in state law. Shortly thereafter, the court granted Northwest's motion for dismissal or, alternatively, for summary judgment as to all but one cause of action. J.A. at 22a. In April 1987, Liberty Mutual moved for dismissal of the complaint on the ground that, under the then-recent Supreme Court decision in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Davises' state law claims were preempted by ERISA. J.A. at 23.

These skirmishes set the stage for the District Court's dispositive order of August 31, 1987. Relying in part on the facts adduced at a prior evidentiary hearing, the court determined, first, that Northwest's health plan was an "employee welfare benefit plan" within the meaning of ERISA and implementing regulations. J.A. at 133–36; 29 U.S.C. § 1002(1) (1982); 29 C.F.R. § 2510.3-1(j) (1988). Next, the District Court concluded that the Davises' state law claims were within ERISA's preemptive sweep, as elucidated by the *Pilot Life* decision. J.A. at 133–36. In an effort to provide guidance concerning ERISA's application to the case, the court then examined the Davises' complaint and concluded that the pleading "can fairly be construed only to allege an action for recovery of benefits due under the terms of the plan." J.A. at 137. On this basis, the court granted summary judgment against the Davises as to all state law claims *except* those seeking benefits. *Id.* To allow the Davises to craft an ERISA-based claim for benefits, the District Court allowed them "ten days to file an amended complaint consistent with this memorandum order." J.A. at 138.

The Davises did not, however, heed entirely the restrictions embodied in the District Court's order. Instead, on September 15, 1987, they filed yet another amended complaint that set forth several ERISA-based claims for relief in addition to their claim for benefits. J.A. at 150. In particular, the Davises alleged that Liberty Mutual and Northwest had failed (1) to supply a "summary plan description," 29 U.S.C. §§ 1024(b)(1), 1132(c) (1982), and (2) to implement adequate procedures for review of claims, 29 U.S.C. § 1133 (1982). At the same time, the Davises filed a motion requesting that the August 31 order be amended to allow ERISA claims for precisely such relief. J.A. at 144. The District Court, however, rejected the entire enterprise; specifically, the court (1) declined to modify its order; (2) dismissed the case *in toto* on the ground that the Davises' broadly crafted complaint exceeded the scope of its August 31 order, J.A. at 183–84; *see also* Fed.R.Civ.P. 41(b) (providing that dismissal may be imposed for failure to comply with "any order of the court"); and (3) stated that "[a]side from these substantive objections, plaintiffs' proposed amendment is filed out of time." J.A. at 184.[1]

## II

The court's dismissal of this case raises before us primarily the question whether the District Court abused its discretion by restricting the Davises to an ERISA-based claim for benefits due under the terms of the health insurance plan. 29 U.S.C. § 1132(a)(1)(B) (1982). Our resolution of this question is substantially guided by Rule 15(a) of the Federal Rules of Civil Procedure, which provides that "leave [to amend] shall be freely given when justice so requires." It is common ground that Rule 15 embodies a generally favorable

---

1. During oral argument, however, counsel for Liberty Mutual and Northwest freely conceded that the amended complaint had in fact been timely filed. The Federal Rules of Civil Procedure provide that where, as here, "the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

Fed.R.Civ.P. 6. There were two weekends and one legal holiday between August 31, the date on which the District Court granted leave to amend, and September 15, the date on which the Davises filed their amended complaint. The complaint was thus filed within the prescribed period.

policy toward amendments.[2] *See Yellow Bus Lines, Inc. v. Local Union 639*, 839 F.2d 782, 795 (D.C.Cir.1988), citing 6 C. Wright & A. Miller, Federal Practice & Procedure § 1484 (1971). On this point, the Supreme Court has stated:

> If the underlying facts or circumstances relied upon by the plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

In this case, the amended complaint contained allegations to the effect that the Davises were subjected to inadequate procedures with respect to claims denial and review. J.A. at 16–19, 22c. These allegations are sufficient to state a colorable claim that Liberty Mutual and Northwest failed to comply with section 1133's requirement of "adequate notice" of claims denial and a "reasonable opportunity" for review of such denial. 29 U.S.C. § 1133 (1982). The problem, however, is that ERISA only affords equitable relief for violations of that provision, *see* 29 U.S. C. § 1132(a) (1982); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987), and this case has long since passed beyond the point at which meaningful equitable relief would be possible.

When questioned on this point at oral argument, the Davises' counsel stated that his clients were seeking a declaration that Liberty Mutual and Northwest had violated section 1133. Counsel could not, however, identify with precision any continuing or threatened injury that would be redressed by such a declaration. Nor can we. Even assuming that, back in 1984, the Davises were not adequately informed of the reasons for denial of benefits, all that information has since been brought to light. Similarly, the Davises do not seek (through a grant of interim relief or otherwise) to invoke the Northwest–Liberty Mutual claims procedures. The question whether the claims procedures are adequate has thus been pretermitted by the passage of time and the changed status of the Davises' relationship to Liberty Mutual and Northwest. Inasmuch as the grant of declaratory relief would, at this late date, constitute a hollow exercise,[3] we affirm the District Court's dismissal of claims under section 1133.[4] *Cf. Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 546–48 & n. 9, 106 S.Ct. 1326, 1335 & n. 9, 89 L.Ed.2d 501 (1985) (failure to allege facts bearing on standing as intervenor justifies dismissal under Rule 24(a), Fed.R.Civ.P.); *Haase v. Sessions*, 835 F.2d 902, 905–08 (D.C.Cir. 1987) (dismissal under Rule 12(b)(1) is appropriate where, assuming the truth of the facts alleged in the complaint, plaintiff has failed to show a judicially cognizable injury).

The Davises' amended complaint also contained allegations that they had

---

2. Although both parties assume that amendment was essential for the case to move forward under federal law, we have some doubt whether this was so under the liberal "notice" pleading standards of the Federal Rules of Civil Procedure. *See generally Conley v. Gibson*, 355 U.S. 41, 45–48, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957); *Hanson v. Hoffmann*, 628 F.2d 42, 53 (D.C.Cir.1980); 5 C. Wright & A. Miller, *supra*, 1216. We will address the case on the same assumption as the parties, without endorsing it.

3. It is well established that Article III requires a plaintiff seeking declaratory judgment to demonstrate a possibility of future injury which is of "sufficient immediacy and reality." *Golden v. Zwickler*, 394 U.S. 103, 109, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969). *See also City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983) (applying a similar standard to claims for injunctive relief); *O'Shea v. Littleton*, 414 U.S. 488, 497–98, 94 S.Ct. 669, 676–77, 38 L.Ed.2d 674 (1974) (same).

4. For the same reason, dismissal was proper as to the Davises' claim that violations of section 1133 created a right to equitable relief under section 1109. J.A. at 158; 29 U.S.C. §§ 1109, 1133 (1982).

received inadequate and misleading information concerning the scope and term of Northwest's health plan. J.A. at 22c, 11–12, 16. Viewed generously, these allegations state a claim against Northwest (but not against Liberty Mutual) for failure to supply a summary plan description as required by ERISA's sections 1024(b)(1) and 1132(c). These provisions state as follows:

(1) The *administrator* shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description and all modifications and changes referred to in section 1022(a)(1) of this title—

(A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or

(B) if later, within 120 days after the plan becomes subject to this part.

29 U.S.C. § 1024(b)(1) (1982) (emphasis supplied); *see also* 29 U.S.C. § 1022 (1982) (describing the "summary plan description"). The second provision of pertinence in this respect states:

"Any *administrator* who fails or refuses to comply with a request for any information which such *administrator* is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal...."

29 U.S.C. § 1132(c) (1982) (emphasis supplied).

It will be evident that the term "administrator" looms large in our inquiry on this point. The statute defines "administrator" as "the person specifically so designated by the terms of the instrument under which the plan is operated," or "if an administrator is not so designated, the plan sponsor."

29 U.S.C. § 1002(16)(A)(i), (ii) (1982). "Plan sponsor" is, in turn, defined (in pertinent part) as "the employer in the case of an employee benefit plan established or maintained by a single employer." 29 U.S.C. § 1002(16)(B)(i) (1982).

■ From these provisions, it is manifest that Liberty Mutual cannot be the target of such a claim because, as the insurer, it is not the plan "administrator" within the meaning of ERISA. As the Davises' counsel forthrightly acknowledged at oral argument, Liberty Mutual is nowhere designated by the plan as "administrator," nor has it been suggested that Liberty Mutual fits within the statutory definition of "plan sponsor."[5] Dismissal of their claim against Liberty Mutual under sections 1024(b)(1) and 1132(c) was thus proper.

■ In contrast, the Davises' claim against Northwest does not suffer from this defect; that is, a court could reasonably conclude that Northwest, as Mr. Davis' employer, was the plan "administrator." Northwest urges, however, that it cannot be held liable under section 1024(b)(1) because the Davises never tendered a written request for summary plan information. For this point, Northwest relies upon section 1024(b)(4), which provides:

The administrator shall, *upon written request* of any participant or beneficiary, furnish a copy of the latest updated summary plan description ... The administrator may make a reasonable charge to cover the cost of furnishing such complete copies.

29 U.S.C. § 1024(b)(4) (1982) (emphasis supplied).

Northwest's argument depends on the proposition that section 1024(b)(4)'s requirement of a written request applies to the

---

**5.** We are unmoved by the Davises' argument that Liberty Mutual should be held liable, as a fiduciary, for failure to supply a summary plan description. In particular, the Davises urge that, since Liberty Mutual was possessed of the information to be conveyed by the plan description, it would be unfair to saddle Northwest with full responsibility for the failure to furnish this information. The simple answer to this is that the statute contains nothing to indicate that fiduciaries have an obligation to provide summary plan information. The Davises thus ask us, in effect, to tailor the statute to the "equities," as they perceive them, of this situation. Respect for our proper role requires that we decline this invitation to substitute our notions of fairness for the duties which Congress has specifically articulated by imposing liability on the "administrator."

duty under section 1024(b)(1), *see* p. 5 *supra*, to supply a summary plan description. But the most natural reading of these two provisions is that section 1024(b)(1) imposes a duty on the administrator to furnish a plan description upon the occurrence of certain events (*e.g.*, when a participant or beneficiary first becomes associated with the plan), whereas section 1024(b)(4) speaks to the administrator's responsibilities with respect to requests for information that the administrator is not obligated to provide under section 1024(b)(1). This reading is supported by section 1024(b)(1)'s command that the administrator *shall* provide a plan description within 90 (or in some cases 120) days after an individual becomes affiliated with an ERISA plan, as well as by section 1024(b)(4)'s provision for a reasonable charge for information provided. Northwest's argument fails because section 1024(b)(1), which imposes no written request requirement, creates a duty distinct from that imposed by section 1024(b)(4).

■ In sum, the District Court's dismissal order was proper as to claims that Liberty Mutual failed to supply a summary plan description, 29 U.S.C. §§ 1024(b)(1), 1132(c) (1982), and that Liberty Mutual and Northwest implemented inadequate claims procedures. 29 U.S.C. § 1133 (1982). The District Court erred, however, by refusing to allow the Davises' colorable claim that Northwest failed to provide a summary plan description.[6] Because dismissal with prejudice is a sanction cautiously to be employed, *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958), we believe that the Davises' response to the overly restrictive August 31 order will not support dismissal of otherwise proper claims, namely the claim for benefits and the claim against Northwest for failure to furnish a summary plan description.[7]

\* \* \* \* \* \*

For the foregoing reasons, the judgment is affirmed in part, reversed in part and the case is remanded to the District Court for further proceedings on the remaining claims.[8]

*Judgment accordingly.*

---

6. Northwest contends that leave to amend was properly denied because the Davises asserted their ERISA claims at an unreasonably advanced stage of the litigation. We think not. As we have seen, the Davises were able to file their (allegedly overbroad) ERISA complaint within the time allotted for filing the more narrowly-focused complaint mandated by the District Court. The amendments contained in the complaint as filed thus did not unduly delay the proceedings. Nor was it unreasonable for the Davises to wait until after the District Court's preemption ruling to assert ERISA claims. No one has suggested that the Davises' opposition to ERISA's applicability (in particular, their contention that Northwest's health plan was not covered by ERISA) lacked a colorable legal or factual predicate. Although the litigation would presumably have more quickly been resolved had the Davises initially asserted ERISA claims, their failure to do so was, we think, adequately justified by their obvious preference for state-law based relief (which they apparently saw as decidedly more favorable in scope than a claim under ERISA). *See Yellow Bus Lines Inc. v. Local Union 639*, 839 F.2d 782, 795 (D.C.Cir.1988) (leave to amend should be granted in the absence of prejudice, bad faith or deliberate delay).

7. It should go without saying that our determination that a claim, as pleaded, is proper means only that the Davises are now able to assert these claims; we intimate nothing whatever on the merits of their remaining challenges.

8. The Davises' ERISA complaint included a claim for prejudgment interest under sections 1132(a)(1)(B) and 1132(a)(3), and a claim for attorney's fees under section 1132(g). J.A. at 158. On appeal, Liberty Mutual and Northwest did not discuss these claims. Inasmuch as, at this stage of the litigation, no showing has been made that these claims are futile or otherwise improper, they fall within the scope of our remand to the District Court.

It also bears mentioning that the Davises did not challenge the District Court's determination that ERISA preempted their state law claims. Brief of Petitioners at 7. That question (*i.e.*, the right, if any, to pursue state-law based relief notwithstanding ERISA's preemptive sweep) is now closed.