### The PSYCHIATRIC INSTITUTE OF WASHINGTON, D.C., INC., Plaintiff,

### v.

### CONNECTICUT GENERAL LIFE INSURANCE COMPANY

### and

### Michael T. White, Defendants.

### Civ. A. No. 90–2391 SSH.

United States District Court, District of Columbia.

Jan. 3, 1992.

---

Robert O. Johnson, Bethesda, Md., for plaintiff.

Theresa E. Cummins, Daniel J. Conway, Arlington, Va., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on defendant Connecticut General Life Insurance Company's (CGL's) motion to dismiss the action and on its motion to strike plaintiff's pleading captioned "Reply." CGL bases its motion to dismiss on the assertion that plaintiff's four state law claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), and bases its motion to strike on the assertion that plaintiff's pleading violates Local Rule 108. Upon consideration of the entire record, the Court denies defendant's motion to strike, denies the motion to dismiss with regard to Counts II and IV of the complaint, and grants the motion to dismiss with regard to Counts I and III of the complaint. The Court's dismissal of Counts I and III is without prejudice to plaintiff's right to file an amended complaint within 30 days of the date of this Opinion.

## BACKGROUND

Plaintiff, The Psychiatric Institute of Washington, D.C., Inc. (PIW), is a healthcare provider seeking compensation for services rendered to defendant Michael T. White. White was a participant in a group health insurance plan provided by defendant CGL through White's employer, Comsite. PIW treated defendant White as an inpatient between July 6, 1988, and August 1, 1988, and between September 3, 1988, and September 9, 1988. Having received only partial compensation for those services, PIW filed this action in the Superior Court of the District of Columbia. Defendant CGL subsequently removed the case to this Court, based on 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(1)(B). *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

PIW contends that, at the outset of each period of treatment, it obtained oral verification of defendant White's coverage from defendant CGL. PIW also alleges that, prior to each admission, White entered into a written agreement with PIW, authorizing PIW to file insurance claims on his behalf and assigning his insurance benefits to PIW. At the time of White's second admission to PIW, plaintiff mailed CGL an insurance benefits questionnaire requesting written confirmation of the health insurance coverage available to White. However, plaintiff did not receive the completed questionnaire from CGL until after the conclusion of White's second period of treatment. The document stated that White's health insurance coverage had been canceled as of July 5, 1988, one day prior to White's first admission to PIW. Although CGL paid PIW $4,385.60 on August 26, 1988, it subsequently refused to pay the remaining $14,388.15 in charges for White's treatment at PIW.

On its face, PIW's complaint is grounded entirely on state law. The complaint consists of two contract claims against CGL, Count I and Count III, a claim of promissory estoppel against CGL, Count IV, and a contract claim against White, Count II. PIW seeks damages from defendants CGL and White in the amount of $14,388.15, prejudgment interest at the statutory rate from September 9, 1988, and attorneys' fees of $2,158.22.

## DISCUSSION

### 1. CGL's Motion To Strike.

Defendant CGL moved to strike plaintiff's pleading captioned "Reply," based on Local Rule 108 and Fed.R.Civ.P. 12(f). De-

fendant argues that the pleading should be stricken because it was not accompanied by Points and Authorities as required by Rule 108, because it did not meet Rule 108's requirement that opposing Points and Authorities be filed "within eleven (11) days of the date of service or at such other time as the court may direct," and because it constitutes an unauthorized additional pleading. In the interests of developing a more complete record, the Court exercises its discretion and denies defendant's motion to strike.

### 2. CGL's Motion To Dismiss.

#### A. The Existence of an ERISA "Plan."

Plaintiff PIW contends that CGL's Motion To Dismiss is "premature," because plaintiff has not alleged that the contract of insurance between White and CGL was part of an ERISA "plan," and because the evidence in the record does not conclusively demonstrate that the health insurance benefits in this case were governed by ERISA. Section 1003 of ERISA provides that with limited exceptions, ERISA "shall apply to any employee benefit plan if it is established or maintained—(1) by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). Although PIW's complaint does not explicitly allege the existence of an ERISA plan, plaintiff does allege the existence of a plan of the kind ERISA covers. PIW's complaint alleges that "[d]efendant [CGL] was the health benefits insurer for employees of Comsite, a corporation which is located in Beltsville, Maryland, pursuant to a contract of insurance," and that White was "an employee of Comsite and a participant in the health insurance plan of his employer." Furthermore, the insurance benefits questionnaire completed by CGL and attached to PIW's com-

plaint lists "Comsite" as the "Group Name" for the policy covering White until July 5, 1988, the date on which CGL alleges White's benefits were canceled. In light of PIW's pleadings, the Court concludes that defendant's motion to dismiss is not premature.[1]

#### B. Claims Against CGL Based on Breach of Insurance Contract.

Counts I and III set forth state law claims alleging that CGL breached its contract of insurance with White. The complaint asserts that CGL is contractually obligated to pay PIW the remaining charges for services rendered to White, due to PIW's status as an assignee of White's healthcare benefits (Count I) or as a third-party beneficiary to White's contract of insurance with CGL (Count III). CGL contends that ERISA preempts these contractual claims arising from state common law, because they "relate to" an employee benefit plan. The Court agrees.

ERISA preempts every state law that "relate[s] to ... employee benefit plan[s]" classified under § 1003(a), unless the state law "regulates insurance, banking, or securities." 29 U.S.C. §§ 1144(a), 1144(b). "[A] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *see Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). "[I]n order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." *Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1553; *see Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724,

---

1. PIW's reliance on *Weiner v. Blue Cross of Md., Inc.*, 730 F.Supp. 674 (D.Md.1990), *aff'd*, 925 F.2d 81 (4th Cir.1991), is misplaced. The facts in *Weiner* differ materially from those alleged in this case. In *Weiner*, the owner of a gas station obtained insurance benefits for his family through membership in a national industry association, known as the Allied Gasoline Retailers' Association of Florida. The group policy identified the Association, not the gas station

owner, as the "employer," and the policy "was signed by an insurance agency that marketed group plans for Blue Cross." *Weiner*, 730 F.Supp. at 675. Based on PIW's complaint, White, unlike the insureds in *Weiner*, was a participant in a health insurance plan established by his employer pursuant to a contract with CGL, not a participant in a plan established by an industry association or an insurance broker.

739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). Thus, to be exempt from preemption, a law must regulate the "business of insurance," as defined for the purposes of the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq. Metropolitan Life,* 471 U.S. at 742–744, 105 S.Ct. at 2390–91 (citing *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)).

Ultimately, " '[t]he question whether a certain state action is pre-empted by federal law is one of congressional intent.' " *Pilot Life,* 481 U.S. at 45, 107 S.Ct. at 1552 (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985)); *see Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987). Congress intended ERISA to provide a comprehensive and exclusive civil enforcement scheme that would protect the interests and contractually-defined benefits of ERISA-plan participants and beneficiaries. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989); *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985); *Shaw,* 463 U.S. at 90, 103 S.Ct. at 2896. Congress also intended to protect employ-

ers from the burden of accommodating diverse and conflicting state laws regulating the administration of employee benefit plans. *Fort Halifax,* 482 U.S. at 10–11, 107 S.Ct. at 2217. To accomplish these ends, Congress replaced the original, limited preemption clause, contained in the bill that became ERISA, with "deliberately expansive" provisions. *Pilot Life,* 481 U.S. at 46, 107 S.Ct. at 1552. Section 502(a) of ERISA contains " 'six carefully integrated civil enforcement provisions [which] ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.' " *Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556 (quoting *Massachusetts Mut. Life,* 473 U.S. at 146, 105 S.Ct. at 3092).[2]

State law contract claims brought by plan participants and by health care providers that have rendered services to plan participants are preempted by ERISA because they "relate to" employee benefit plans and are not based on state laws "which regulate insurance." *Thayer v. Group Hospitalization and Medical Servs., Inc.,* 674 F.Supp. 924, 925 (D.D.C. 1987).[3] PIW's state law contract claims not only "relate" to an employee benefit plan, they depend on an employee benefit

---

**2.** Section 1132(a) of ERISA provides:

A civil action may be brought—
(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
(4) by the Secretary, or by a participant, beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;
(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain

other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter; or
(6) by the Secretary to collect any civil penalty under subsection (c)(2) or (i) or (*l*) of this section.
29 U.S.C. § 1132(a).

**3.** *See also Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990) (ERISA preempts healthcare provider's breach of contract claims against patient's employer and insurer, but does not preempt provider's state law claims alleging equitable estoppel, negligent misrepresentation, and deceptive and unfair trade practices); *Hermann Hosp. v. MEBA Medical & Ben. Plan,* 845 F.2d 1286 (5th Cir.1988) (ERISA preempts healthcare provider's state law claims for breach of contract, equitable estoppel, fraud, negligence, and breach of fiduciary duty against pension plan, but provider has standing to sue under ERISA, if provider is an assignee of the participant's benefits); *Straub v. Western Union Tel. Co.,* 851 F.2d 1262 (10th Cir.1988) (ERISA preempts employee's claims of breach of contract and negligent misrepresentation against employer).

plan. Alleging a breach of the insurance contract between CGL and White, PIW seeks to recover the healthcare benefits provided under the contract. PIW's allegations and requested relief are centrally "connected to the concerns addressed by ERISA," *Hartle v. Packard Elec.*, 877 F.2d 354, 356 (5th Cir.1989), and directly "affect relations among principal ERISA entities— the employer, the plan fiduciaries, the plan, and the beneficiaries—as such." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1470 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987), *and cert. denied*, 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).[4] Allowing providers to bring state law contract claims against insurers of ERISA plans would undermine Congress's goal of promulgating uniform standards for establishing and administering employee benefit plans. Congress intended ERISA to make plan regulation an exclusively federal domain.[5] Due to the relationship between Counts I and III and the ERISA plan alleged in this case, the Court holds that ERISA preempts plaintiff's contract claims against CGL and mandates their dismissal.

Nevertheless, plaintiff retains the right to amend Counts I and III of its original complaint. "It is common ground that Rule 15 embodies a generally favorable policy toward amendments." *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1137 (D.C.Cir.1989). Consequently, the Court dismisses Counts I and III without prejudice to plaintiff's right to amend the complaint to state a claim for which relief may be granted under ERISA.

■■■ The facts alleged indicate that PIW would have standing to state a contract claim against CGL under ERISA. A healthcare provider designated as an assignee of an employee's health benefit contract has derivative standing to sue the employee's insurer under ERISA. *Hermann Hosp.*, 845 F.2d at 1289–1290; *Misic v. Bldg. Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1377–78 (9th Cir.1986).[6] However, healthcare providers

---

**4.** *Cf. Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 25, 103 S.Ct. 2841, 2853, 77 L.Ed.2d 420 (1983) (ERISA does not preempt action to enforce state taxes, because it is not centrally related to ERISA); *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990) (ERISA would not preempt a claim of fraud in inducement brought by an employee against employer's insurance agent, because the claim only relates to the plan "indirectly"); *Hartle*, 877 F.2d at 356 (5th Cir.1989) (ERISA does not preempt former employee's action for wrongful discharge, because the claim is only "peripherally connected" to ERISA); *Sommers*, 793 F.2d at 1470 (ERISA does not preempt claims based on the state common law of corporate fiduciary duty, because the law relates to benefit plans in "too tenuous ... a manner"); and *Schultz v. National Coalition of Hispanic Mental Health and Human Servs. Orgs.*, 678 F.Supp. 936, 937–38 (D.D.C.1988) (former employee's state employment law claims for damages incurred due to discharge are not preempted by ERISA).

**5.** The *Hermann* court summarized the evidence of Congress's intention to allow the assignment of ERISA health benefits, stating:

[t]o deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goal of enhancing employees' health and welfare benefit coverage. Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his finances and to reduce

the risk of non-payment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative, indirect and uncertain as they are, would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them 'upfront.' The providers are better situated and financed to pursue an action for benefits owed for their services. Allowing assignees of beneficiaries to sue under § 1132(a) comports with the principle of subrogation generally applied in the law.
*Hermann Hosp.*, 845 F.2d at 1289–1290 n. 13.

**6.** The Court of Appeals for the District of Columbia Circuit has not yet addressed the standing of healthcare providers under ERISA. However, one District Court has stated "[f]rom Congress' silence ... it follows that assignments of health benefit claims are not barred [by ERISA]." *Washington Hosp. Center Corp. v. Group Hospitalization and Medical Servs., Inc.*, 758 F.Supp. 750, 753 n. 2 (D.D.C.1991).

Other courts have also held that ERISA health and welfare benefits may be assigned to third parties. *See Belmont Community Hosp. v. Local Union No. 9, I.B.E.W. & Outside Contractors Health & Welfare Fund*, 737 F.Supp. 1034, 1036 (N.D.Ill.1990) (citing *Hermann Hosp.*, 845 F.2d 1286, 1289–90); *Multicare Health Care Servs.*,

do not have independent standing to sue under ERISA, because they are "non-enumerated" parties. 29 U.S.C. § 1132(a); *Hermann Hosp.*, 845 F.2d at 1289; *see also Grand Union Co. v. Food Employers Labor Relations*, 808 F.2d 66, 71 (D.C.Cir. 1987) (employers do not have standing to sue under Title I of ERISA, because they are non-enumerated parties under 29 U.S.C. § 1132(a)); *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 892 (2d Cir.1983), *cert. dismissed*, 463 U.S. 1233, 104 S.Ct. 26, 77 L.Ed.2d 1449 (1983), *and cert. denied*, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983) (as non-enumerated parties, pension funds do not have standing to sue under ERISA).[7] *But see Fentron Indus. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1304 (9th Cir.1982) (certain non-enumerated parties do have standing to sue under ERISA).[8] Federal common law and statutory law govern when state law causes of action are preempted. *Misic*, 789 F.2d at 1377 (citing *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942)). Under federal common law, an assignee has the right to bring the claims of his assignor. *Misic*, 789 F.2d at 1378.[9] Thus, although a healthcare provider does not have independent standing to sue under ERISA, a healthcare provider in PIW's position has derivative standing to sue as an assignee of an ERISA plan participant or beneficiary.

■ Granting standing to healthcare providers under ERISA is consistent with Congress's intent to promote employee interests and to protect their "contractually defined benefits." *Massachusetts Mut. Life*, 473 U.S. at 148, 105 S.Ct. at 3093; *Hermann Hosp.*, 845 F.2d at 1289 n. 13. As an assignee, the healthcare provider "stands in the shoes" of plan participants, parties whom ERISA was designed to protect and who "are expressly authorized by section 1132(a)(1)(B) to sue to recover benefits due under a plan." *Misic*, 789 F.2d at 1378.[10] Furthermore, denying providers

---

*Inc. v. General Am. Life Ins. Co.*, 720 F.Supp. 581, 582 (N.D.Tex.1989); *Wisconsin Dept of Health and Social Servs. v. Upholsterers International Union Health and Welfare Fund*, 686 F.Supp. 708, 713–14 (W.D.Wis.1988); *see also Northwest Adm'rs, Inc. v. Con Iverson Trucking, Inc.*, 749 F.2d 1338, 1339 (9th Cir.1984) (assignee of trust funds permitted to sue under ERISA). *But see Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229*, 764 F.2d 147, 154, n. 6 (3d Cir.1985) (although the court found no assignment of benefits had been made, the court stated in dicta that ERISA health benefits cannot be assigned).

**7.** In *Pressroom,* the Second Circuit denied standing to a pension fund, holding that the lack of evidence on Congress's intention regarding the standing of non-enumerated parties under § 1132(a) should be construed to deny standing under ERISA to non-enumerated parties. *Pressroom,* 700 F.2d 889. The Second Circuit did not, however, address the standing of healthcare providers as assignees of employee insurance contracts. *Id.*

**8.** This Court rejects the *Fentron* court's holding that ERISA may implicitly authorize independent standing for parties not explicitly enumerated by the statute. *Fentron,* 674 F.2d at 1304. The Fifth Circuit and the Second Circuit have also rejected the *Fentron* court's approach. *Hermann Hosp.*, 845 F.2d at 1288–1289; *Pressroom,* 700 F.2d 889.

**9.** *See also United States Fidelity & Guar. Co. v. United States,* 231 U.S. 237, 243, 34 S.Ct. 88, 90, 58 L.Ed. 200 (1913) (assignee of claimant under federal construction contractors' performance bond has standing to sue); *Title Guar. & Trust Co. v. Crane Co.,* 219 U.S. 24, 29, 34, 31 S.Ct. 140, 142, 55 L.Ed. 72 (1911) (same); *Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau,* 701 F.2d 1276, 1282–83 (9th Cir. 1983) (as amended) (valid assignment under antitrust laws confers standing on assignee), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983); *Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598, 602 (5th Cir.1982) (same), *cert. dismissed, Morgan Drive Away, Inc. v. Samford,* 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars, etc.,* 661 F.2d 319, 326–27 (5th Cir.1981) (valid assignment gives assignee standing under forfeiture laws); *see generally* L. Fuller & M. Eisenberg, Basic Contract Law 794–801 (4th ed.1981).

**10.** In *Misic,* plaintiff, a healthcare provider, sued an employer-funded health and welfare benefit plan, alleging a contract claim under ERISA, state law tort claims, and unfair business practices in violation of the California Insurance Code. The court held that plaintiff's state law claims were preempted, but that as an assignee of plan beneficiaries, plaintiff had standing under ERISA to assert the breach of contract claim and other claims of his assignors. *Misic,* 789 F.2d at 1379.

standing under § 1132(a) would discourage them from admitting individuals unable to pay for services "upfront" and prompt providers to check patient solvency before treatment. *Misic,* 789 F.2d at 1377. Such a verification process would burden employees seeking treatment, exacerbate the problem of rising healthcare costs, and thwart Congress's aim of safeguarding employees' interests in health and welfare benefits. *Hermann Hosp.,* 845 F.2d at 1289 n. 13; *Misic,* 789 F.2d at 1378–1379. Thus, although this Court grants defendant's motion to dismiss with respect to Counts I and III, plaintiff retains the right to amend those claims and would have standing to state a contract claim against CGL under ERISA.

### C. Promissory Estoppel Claim Against CGL.

Count IV of PIW's complaint asserts a claim of promissory estoppel against CGL. PIW argues that it provided services to White in reliance on statements by CGL employees confirming the availability of benefits covering the services proposed by PIW. PIW alleges that as a result of its reliance on the verification of coverage pro-

vided by CGL, PIW rendered $14,388.15 in services for which it has not been compensated. Although state law claims of equitable estoppel brought by healthcare providers against insurers of ERISA plans are preempted by ERISA, defendant's motion to dismiss this claim of promissory estoppel is denied. Plaintiff states a claim for which relief can be granted under the federal common law governing actions preempted, but not specifically addressed, by ERISA.

■ Employees and healthcare providers have a federal common law cause of action against insurers who have provided an oral interpretation of ambiguous ERISA plan provisions. *See Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990).[11] Although ERISA provides explicitly for contract claims, it does not provide for promissory estoppel claims.[12] Nevertheless, ERISA preempts plaintiff's state law promissory estoppel claim for the same reasons it preempts plaintiff's state law contract claims. *See Kane,* 893 F.2d at 1285; *Hermann Hosp.,* 845 F.2d at 1290.[13] *But see Memorial,* 904

---

11. *Compare Nachwalter v. Christie,* 805 F.2d 956, 960 (11th Cir.1986). The Court in *Nachwalter* held that "the federal common law of equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of employee plans governed by ERISA," due to ERISA's requirement that plans be written, 29 U.S.C. § 1102(a)(1)). In *Nachwalter,* trustees of two employee benefit plans sought a declaratory judgment to determine the extent of their liability to the widow of a deceased plan participant, who was a stockholder, employee, officer, and director of the firm. The widow alleged that the trustees and her late husband had reached an oral agreement to value his share of the plan's net assets on a date that differed from the one specified in the plan. However, the Eleventh Circuit held that the trustees in *Nachwalter* could not be estopped from enforcing the written terms of the plan. *Nachwalter,* 805 F.2d at 960. This case differs from *Nachwalter,* because this case involves an insurer's oral interpretation of a written plan, not an oral agreement to modify a plan. *See also Lee v. E.I. Du Pont de Nemours & Co.,* 894 F.2d 755, 758 (5th Cir.1990); *Davidian v. Southern California Meat Cutters Union & Food Employees Ben. Fund,* 859 F.2d 134 (9th Cir.1988); *Comprehensive Care Corp. v. Dough-*

*try,* 682 F.Supp. 516 (S.D.Fla.1988) (also on the preclusion of oral plan modifications by ERISA).

12. ERISA gives beneficiaries the right to recover contractual plan benefits under § 1132(a)(1)(B). The fiduciary obligations explicitly imposed by ERISA are "to the plan." *Massachusetts Mut. Life,* 473 U.S. at 140, 105 S.Ct. at 3089 (1985).

13. Like plaintiff's contract claims against CGL, plaintiff's state promissory estoppel claim is preempted by ERISA, because it "relate[s] to" the employee benefit plan and is not exempt from ERISA preemption under the "savings clause." 29 U.S.C. § 1144(b)(2)(A). Furthermore, classifying promissory estoppel claims against insurers as state claims, not preempted by ERISA, would undermine Congress's aim "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits" through federal law. *Ft. Halifax,* 482 U.S. at 8, 107 S.Ct. at 2216. Finally, classifying the breach of contract claim as a federal claim preempted by ERISA and the promissory estoppel claim as a state claim not preempted by ERISA would be neither meaningful nor practical, because claims of equitable estoppel and claims of breach of contract tend to arise to-

F.2d at 245.[14] "Federal courts possess the authority ... to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself." *Kane*, 893 F.2d at 1285. Congress intended that the courts use this authority to develop " ' "a body of Federal substantive law ... to deal with issues involving rights and obligations under private welfare and pension plans." ' " *Firestone*, 489 U.S. at 110–111, 109 S.Ct. at 954 (quoting *Franchise Tax*, 463 U.S. at 24 n. 26, 103 S.Ct. at 2854 n. 26 (quoting remarks of Sen. Javits, 129 Cong.Rec. 29942 (1974)).[15]

A federal common law cause of action for promissory estoppel effectuates Congress's intent "to promote the interest of employees and their beneficiaries in employee benefit plans." *Shaw*, 463 U.S. at 90, 103 S.Ct. at 2896.[16] To protect employee interests, healthcare providers like PIW must have legal recourse against insurers who falsely or negligently provide them with an oral interpretation of a prospective patient's benefit plan. The statutory scheme embodied in ERISA indicates that Congress did not intend to insulate insurers from such liability for mistaken plan interpretations. If providers could not hold insurers accountable for such oral interpretations, they would likely expend significant time and resources obtaining written copies of plans and verifying the solvency of prospective patients. Providers might then be prone to turn away patients who are unable to pay for services "upfront" or to demonstrate an ability ultimately to pay. The consequences of denying providers a cause of action for promissory estoppel would undercut dramatically Congress's goal of promoting employees' interests through ERISA. *See Misic*, 789 F.2d at 1377.[17] Based on the statutory framework and legislative history of ERISA, the Court recognizes plaintiff's promissory estoppel claim as a federal common law cause of action and denies defendant's motion to dismiss with regard to Count IV.

**D. Claim Against White Based on Breach of Medical Services Contract.**

■ Count II of PIW's complaint is a breach of contract claim against the individual defendant White. This claim contends that White entered into a service contract with PIW and remains liable for the charges he incurred as a patient at PIW, despite his assignment of benefits to PIW.[18] This state law contract claim against White is not preempted by ERISA, because it is only "peripherally" related to an ERISA employee benefit plan. *Hartle*,

gether from the same transactions among insurers, employees, and healthcare providers.

**14.** The Court concludes that PIW's state law equitable estoppel claim is preempted, but that as an assignee of an ERISA beneficiary, PIW has derivative standing to bring its equitable estoppel claim under ERISA. *See Kane*, 893 F.2d 1283. Thus, although the Court agrees with the *Memorial* court's conclusion that Congress did not intend to bar providers from bringing equitable estoppel claims against insurers, the Court disagrees with the *Memorial* court's holding that state law equitable estoppel claims are not preempted by ERISA. *See Memorial*, 904 F.2d at 245–246. In *Memorial*, the Fifth Circuit held that ERISA preempts a healthcare provider's breach of contract claim against a patient's employer and insurer, but does not preempt the provider's state law equitable estoppel claim, because the latter is based on the provider's independent status as a healthcare provider, not on the provider's status as an assignee. *Memorial*, 904 F.2d at 247.

**15.** "The expectation that a federal common law of rights and obligations under ERISA-regulated plans would develop ... would make little sense, if the remedies available to ERISA participants and beneficiaries under § 502(a) could be supplemented or supplanted by various state laws." *Pilot Life*, 481 U.S. at 56, 107 S.Ct. at 1558. "Even when adopting traditional trust principles [in ERISA], it was envisioned [by Congress] that federal courts would apply federal common law." *Foltz v. U.S. News & World Report, Inc.*, 627 F.Supp. 1143, 1176 n. 78 (D.D.C.1986).

**16.** *See Kane*, 893 F.2d 1283; *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985); *Torrence v. Chicago Tribune Co.*, 535 F.Supp. 748 (N.D.Ill.1982).

**17.** *See supra* n. 10.

**18.** Exhibit B of PIW's complaint, a document entitled "Conditions of Admissions," which appears to be signed by White, supports plaintiff's allegations. The exhibit states that "[t]he undersigned and/or the patient are responsible for any and all charges not covered by this assignment" of benefits to PIW.

 

877 F.2d at 356. This claim is not a suit to recover benefits under a plan and it does not involve claims processing or the administration of a benefits plan. Consequently, recognizing this state law claim does not threaten to undermine Congress's goal of "afford[ing] employers the advantages of a uniform set of administrative procedures governed by a single [federal] set of regulations." *Ft. Halifax*, 482 U.S. at 11, 12, 107 S.Ct. at 2216, 2217.

State common law governing contracts between patients and healthcare providers is "a law of general application" which applies to all patients regardless of whether they are or ever have been participants in an ERISA welfare benefit plan and to all providers regardless of whether they are assignees of an ERISA plan beneficiary. *Sommers*, 793 F.2d at 1470. Therefore, this law "does not affect relations among the principal ERISA entities—the employer, the plan fiduciaries, the plan, and the beneficiaries, as such." *Id.* Application of state contract law to this claim affects these parties only in their "independent capacities" as patients and healthcare providers, and therefore does not threaten the interests of the employees and beneficiaries ERISA was intended to protect. *Id.* The motion to dismiss Count II of PIW's complaint is denied, as plaintiff states a valid state claim over which this Court has pendent jurisdiction, based on the valid federal claim of promissory estoppel stated in Count IV of PIW's complaint.

## CONCLUSION

The Court denies defendant's motion to strike plaintiff's "Reply" in the interest of permitting a more complete record in this case, although assuredly superfluous pleadings are discouraged. The Court grants defendant's motion to dismiss with respect to Counts I and III, but denies defendant's motion to dismiss with respect to Counts II and IV. Counts I and III are invalid state law contract claims preempted by ERISA, but plaintiff retains the right to amend the complaint to assert federal common law claims within 30 days. Count IV states a valid claim of equitable estoppel under the federal common law, and Count

II asserts a valid state law contract claim which may be addressed by this Court as a pendent claim attached to Count IV.