**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2730
_____

JAY MINERLEY,
                                        Appellant

v.

AETNA, INC.;
AETNA HEALTH, INC., A NJ CORP.;
AETNA HEALTH INSURANCE CO;
THE RAWLINGS COMPANY, LLC;
AETNA LIFE INSURANCE CO.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-13-cv-01377)
District Judge:  Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 27, 2020
_____

Before:  CHAGARES, RESTREPO, and BIBAS, <u>Circuit</u> <u>Judges</u>.

(Opinion filed: February 13, 2020)
_____

OPINION*
_____

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

Jay Minerley, the plaintiff, asserts claims for benefits due and for breaches of fiduciary duties, under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq., against several Aetna entities and The Rawlings Company, LLC (collectively, the "defendants"). The District Court granted summary judgment for the defendants on both claims. We will affirm.

## I.

We write only for the parties, so our summary of the facts is brief.

### A.

Minerley participated in an ERISA-governed employee benefit plan provided by his New Jersey–based employer, Weiss-Aug Company Inc. Weiss-Aug appointed Debra Myshkoff, one of its employees, as the plan administrator. From November 1, 2009 to October 31, 2010, Weiss-Aug's employee benefit plan offered plan members a "dual contract" of health insurance policies that Weiss-Aug bought from Aetna. Appendix ("App.") 372. This meant that an Aetna New Jersey policy provided out-of-network health care benefits for plan members, and a separate state-specific Aetna policy provided benefits for in-network and emergency services through an Aetna Health Maintenance Organization ("HMO") in each member's state of residence. Because Minerley resided in Pennsylvania, his in-network and emergency services were covered by an Aetna Pennsylvania HMO policy ("Aetna PA HMO Policy").

Two other provisions in the Aetna PA HMO Policy are relevant. First, if benefits were provided to a member under the Aetna PA HMO Policy due to injuries caused by a

2

third party, the Aetna PA HMO had a right of subrogation, as well as a right to reimbursement for the benefits paid, if the member ultimately recovered from the third party. Second, a member who sought to dispute an "adverse benefit determination," or who had a "[c]omplaint," had to exhaust administrative remedies before filing a lawsuit. App. 445.

B.

In May 2010, Minerley was injured in a motorcycle accident. Aetna paid $3,512.82 for emergency services in May and June 2010, pursuant to its obligations under the Aetna PA HMO Policy. Subsequently, Rawlings, Aetna's subrogation and reimbursement claims vendor, notified Minerley's attorney that Aetna had a "lien/claim for medical benefits" that were provided in connection with the motorcycle accident, and that Minerley would need to repay Aetna if he recovered money from his third-party tortfeasor in the motorcycle accident. App. 606.

Minerley filed a personal injury lawsuit against his tortfeasor and ultimately recovered money. So, on January 9, 2013, Minerley, through his attorney, sent Rawlings a check for $3,512.82 to satisfy Aetna's demand. Minerley never pursued any administrative remedies to contest Aetna's demand for repayment. Rather, approximately two weeks later, on January 25, 2013, Minerley and two other plaintiffs filed a putative class action in the Superior Court of New Jersey against Aetna and Rawlings. The plaintiffs claimed that Aetna had violated a New Jersey regulation that forbids insurers from seeking subrogation and reimbursement. See N.J. Admin. Code § 11:4-42.10(a).

3

C.

The defendants removed the case to the District Court.  After the District Court ruled that ERISA preempted the plaintiffs' state law claims, Minerley filed an amended class action complaint in which he was the sole named plaintiff.  Minerley's amended complaint alleged that under ERISA, he is entitled to a refund of the $3,512.82 reimbursement he paid to Aetna because that money is a benefit due to him, and because the defendants breached fiduciary duties to him by requiring the reimbursement.

In an order entered on October 1, 2018, the District Court granted summary judgment for the defendants, and against Minerley, on Minerley's benefits-due claim for failure to exhaust pre-litigation administrative remedies.  Subsequently, on June 27, 2019, the District Court granted the defendants' motion for summary judgment on Minerley's remaining claim for breaches of fiduciary duties and denied Minerley's motion for reconsideration of the court's earlier order.  Minerley timely appealed the District Court's grants of summary judgment to the defendants.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(f).  We have jurisdiction under 28 U.S.C. § 1291.  "We review a district court's grant of summary judgment de novo, applying the same standard the district court applied."  Edmonson v. Lincoln Nat'l Life Ins., 725 F.3d 406, 420 n.12 (3d Cir. 2013) (quotation marks omitted).  "Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law."  Id.

4

III.

Minerley challenges the District Court's grant of summary judgment for the defendants on Minerley's ERISA claims for benefits due and for breaches of fiduciary duties. We agree with the District Court and will affirm. We address Minerley's claims in turn.

A.

Minerley argues that Aetna improperly required him to reimburse $3,512.82 because he was entitled to have those benefits paid to him under the terms of Weiss-Aug's ERISA-governed employee benefit plan. His claim, therefore, is a challenge under ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits due to him. See Levine v. United Healthcare Corp., 402 F.3d 156, 163 (3d Cir. 2005) ("Where . . . plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' . . . ."). For Minerley's benefits-due claim, the District Court ruled that pursuant to the terms of the Aetna PA HMO Policy, Minerley needed to exhaust his administrative remedies before suing.

Minerley contends that he was not required to exhaust his administrative remedies because the Aetna PA HMO Policy does not apply to him.[1] He gives two reasons in support: (1) the Aetna PA HMO Policy was not an ERISA plan document that governed

_____

[1] "We review de novo the applicability of exhaustion principles," and "we review for abuse of discretion" when a district court "declines to grant an exception to the application of exhaustion principles." Harrow v. Prudential Ins. of Am., 279 F.3d 244, 248 (3d Cir. 2002).

5

his benefits, and (2) he never received a copy of the Aetna PA HMO Policy. We are not persuaded by either argument.

1.

Minerley asserts that the Aetna PA HMO Policy was not an ERISA plan document that governed his benefits because Weiss-Aug did not incorporate the Aetna PA HMO Policy into a document labeled as Weiss-Aug's ERISA plan, and because insurance policies cannot be plan documents. We disagree.

At the outset, Minerley's argument rests on the incorrect premise that under ERISA, Weiss-Aug needed to incorporate into a single document the terms of its employee benefit plan, and it had to label that document as the "Weiss-Aug Co., Inc. Employee Health Care Plan" since that is the name Weiss-Aug gave its plan on its Form 5500. App. 634. To be sure, when enforcing an ERISA plan, "[t]he plan, in short, is at the center." Heimeshoff v. Hartford Life & Accident Ins., 571 U.S. 99, 108 (2013) (quotation marks omitted). "And once a plan is established," the administrator of the plan has a duty "to see that the plan is 'maintained pursuant to a written instrument.'" Id. (alteration omitted) (quoting 29 U.S.C. § 1102(a)(1)).

Nonetheless, multiple documents may "collectively form" an employee benefit plan, and those documents need not "be formally labelled" as comprising the plan. Horn v. Berdon, Inc. Defined Benefit Pension Plan, 938 F.2d 125, 127 (9th Cir. 1991); see also Tetreault v. Reliance Standard Life Ins., 769 F.3d 49, 55 (1st Cir. 2014) ("ERISA certainly permits more than one document to make up a benefit plan's required written instrument."); Health Cost Controls of Illinois, Inc. v. Washington, 187 F.3d 703, 712

6

(7th Cir. 1999) ("[O]ften the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'"). Minerley's contention that Weiss-Aug never adopted the Aetna PA HMO Policy as part of its employee benefit plan because it was never incorporated it into a document labeled as such, therefore, is without merit.

Minerley also asserts that the Aetna PA HMO Policy was not a plan document because it is an insurance policy. We are not persuaded. The undisputed facts establish that Weiss-Aug bought insurance policies from Aetna, including the Aetna PA HMO Policy, and that those written policies were plan documents that set out elements of Weiss-Aug's ERISA-governed employee benefit plan. Indeed, the Aetna PA HMO Policy contains "[r]ules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services," and these are "the sorts of provisions that constitute a plan." Pegram v. Herdrich, 530 U.S. 211, 223 (2000).

If there were any doubt, decisions from our sister Courts of Appeals support our conclusion that insurance policies may serve as plan documents. See Fontaine v. Metro. Life Ins., 800 F.3d 883, 888 (7th Cir. 2015) (reasoning that a party's "artificial distinction" between "ERISA plan documents and insurance policies" had "no basis in either law or common sense"); Frazier v. Life Ins. of N. Am., 725 F.3d 560, 566 (6th Cir. 2013) ("[T]here appears to be no reason why an insurance policy cannot be both a plan document and asset."); Cinelli v. Sec. Pac. Corp., 61 F.3d 1437, 1441 (9th Cir. 1995) ("[I]t is clear that an insurance policy may constitute the 'written instrument' of an ERISA Plan . . . ."); Gable v. Sweetheart Cup Co., 35 F.3d 851, 856 (4th Cir. 1994) ("An

7

insurance policy may constitute the 'written instrument' of an ERISA plan . . . ."). Accordingly, we reject Minerley's argument that under ERISA, the Aetna PA HMO Policy was not a plan document.

2.

Minerley also argues that even if the Aetna PA HMO Policy were a plan document, he did not receive it upon his request, in violation of an ERISA disclosure regulation, 29 C.F.R. § 2520.104b–1. So, Minerley posits, that alleged failure to comply with the disclosure regulation means the terms of the Aetna PA HMO Policy cannot be applied to him.

We disagree. The ERISA regulation that Minerley cites elaborates on "[g]eneral disclosure requirements" for "[t]he administrator of an employee benefit plan." 29 C.F.R. § 2520.104b–1(a). Minerley does not dispute that the defendants were not the plan administrator of Weiss-Aug's employee benefit plan. That undisputed fact dooms Minerley's argument.

Recently, we concluded that a pension plan participant could not succeed in a lawsuit against the plan's executive director under an ERISA provision, 29 U.S.C. § 1132(c), for failing to disclose the plan's terms upon the pension plan participant's request because "that provision allows suit against an administrator for not responding to requests for certain information," and the executive director was not the plan's "administrator." Bergamatto v. Bd. of Trs. of the NYSA- ILA Pension Fund, 933 F.3d 257, 266, 269 (3d Cir. 2019). We reasoned that allowing the plaintiff to succeed on a claim against someone other than the plan administrator could not be squared with the

8

"the plain text" of the statute, id. at 268, our longstanding recognition that the term "administrator" under ERISA is a "term of art," id. (alteration and quotation marks omitted), and the Supreme Court's admonition that "courts should avoid reading remedies into ERISA's carefully-crafted enforcement scheme," id. (citing Mass. Mut. Life Ins. v. Russell, 473 U.S. 134, 146–47 (1985)).

Those reasons apply here, too. The plain text of the regulation on which Minerley relies elaborates on disclosure obligations for "[t]he administrator of an employee benefit plan." 29 C.F.R. § 2520.104b–1(a) (emphasis added). We will not "stretch" the word "administrator," a term of art in the regulation, to impose consequences on "others whom a disappointed plan participant might like to reach." Bergamatto, 933 F.3d at 269. The regulation is thus immaterial to Minerley's claims against the defendants, who indisputably were not appointed as Weiss-Aug's plan administrator.

\*      \*      \*

We conclude that the Aetna PA HMO Policy governed the benefits that Minerley claims are due to him. Minerley gives several reasons why, even then, the exhaustion requirement in the Aetna PA HMO Policy does not not apply. We have carefully reviewed those arguments, and none persuade us that the District Court erred in concluding that the Aetna PA HMO Policy's exhaustion requirement applied, or that the District Court abused its discretion in declining to grant an exception to exhaustion. Thus, we will affirm the District Court's grant of summary judgment to the defendants on Minerley's benefits-due claim.

9

B.

Minerley also presses his separate claim under ERISA, 29 U.S.C § 1132(a)(3), that the defendants breached three fiduciary duties owed to him when they enforced the reimbursement requirement in the Aetna PA HMO Policy. Assuming without deciding that the defendants were acting as fiduciaries when requesting reimbursement, we agree with the District Court that the defendants are entitled to summary judgment on Minerley's fiduciary duty claim.

First, Minerley asserts that the defendants breached a fiduciary duty by misrepresenting information, on the basis that he requested a copy of his health insurance policy after his motorcycle accident, and Weiss-Aug failed to give him a copy of the Aetna PA HMO Policy. From that premise, Minerley posits that the defendants should be held liable because Weiss-Aug acted as the defendants' agent at that time.

Minerley's argument is flawed because no evidence in the record supports his assertion that Weiss-Aug acted as the defendants' agent when Minerley requested his insurance policy. And to the contrary, Weiss-Aug's contract with Aetna provided that Weiss-Aug and Aetna did not have an agency relationship.

Second, Minerley claims that the defendants breached a duty of loyalty owed to him by seeking reimbursement, contrary to his interest as a beneficiary of and participant in Weiss-Aug's employee benefit plan. We are unconvinced. Minerley's position boils down to an assertion that the defendants violated ERISA by enforcing the plain terms of the reimbursement requirement in the Aetna PA HMO Policy, an ERISA plan document. That position is difficult to reconcile with the Supreme Court's observation that 29 U.S.C

10

§ 1132(a)(3) "countenances only such relief as will enforce <u>the terms of the plan</u> or the statute," reflecting "ERISA's principal function: to protect contractually defined benefits." <u>US Airways, Inc. v. McCutchen</u>, 569 U.S. 88, 100 (2013) (quotation marks omitted).

Third, Minerley argues that because the terms of the insurance policies that Weiss-Aug offered to employees varied depending on employees' states of residence, the defendants breached a duty owed under ERISA. To support this contention, Minerley primarily relies on the Supreme Court's reasoning in <u>Conkright v. Frommert</u> that it would be problematic under ERISA if "employees could be entitled to different benefits depending on where they live." 559 U.S. 506, 520 (2010).

That ostensibly relevant language from the <u>Conkright</u> case, however, is inapposite. The <u>Conkright</u> decision concerned whether a plan administrator's reasonable interpretation of a pension plan was entitled to deference, when a previous interpretation by the plan administrator had been overturned by a federal court of appeals. <u>Id.</u> at 513. The Supreme Court ruled that the plan administrator was owed deference, reasoning in part that "failing to defer" to the plan administrator could subject a single ERISA plan to "different interpretations" in different federal courts. <u>Id.</u> at 520. Thus, the <u>Conkright</u> decision does not bear on Minerley's breach of fiduciary duty claim. And even if the <u>Conkright</u> decision were relevant, the Supreme Court's concern about conflicting judicial interpretations of a single ERISA plan is not implicated here. Accordingly, we will affirm the District Court's grant of summary judgment to the defendants on Minerley's breach of fiduciary duty claim.

IV.

For the foregoing reasons, we will affirm the District Court's orders entered on October 1, 2018, and on June 27, 2019, granting summary judgment for the defendants.