**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1043
_____

DOUGLAS BROWN,
Appellant

v.

COVESTRO LLC WELFARE BENEFITS PLAN;
COVESTRO LLC,
as a plan administrator of the Covestro LLC Welfare Benefits Plan;
STANDARD INSURANCE CO.,
as claims administrator of the Covestro LLC Welfare Benefits Plan
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-22-cv-00954)
Judge: Honorable William S. Stickman, IV
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 1, 2024
_____

Before: CHAGARES, <u>Chief</u> <u>Judge</u>, PORTER, and CHUNG, <u>Circuit</u> <u>Judges</u>.

(Filed: November 12, 2024)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Chief Judge.

Douglas Brown appeals from the District Court's order granting the defendants' motion for summary judgment and denying Brown's motion for summary judgment. On appeal, Brown argues that the District Court applied the wrong standard of review and challenges the plan administrator's determination that he was not totally disabled, and thus, not entitled to long-term disability benefits. Because we conclude that the District Court applied the correct standard of review and substantial evidence supported the administrator's determination, we will affirm the District Court's order.

I.

We write primarily for the parties and recite only the facts essential to our decision. Covestro, LLC ("Covestro") employed Brown as a millwright and provided him with long-term disability insurance. That insurance plan requires claimants seeking more than eighteen months of long-term disability benefits to demonstrate that they are totally disabled. Brown stopped working in June 2019 due to multiple diagnoses relating to back pain and applied for long-term disability benefits in December 2019. Standard Insurance Company ("Standard") approved Brown's initial claim in March 2020 based in part on a report submitted by Brown's physician, Dr. Kim, who opined that Brown would not be able to lift, push, or pull more than fifty pounds for approximately six months.

Standard terminated Brown's benefits in June 2021. It based its determination on Kim's January 2021 report, which noted that Brown was teaching part-time and was "independent with all activities of daily living," and recommended that Brown refrain from lifting, pushing, or pulling more than fifty pounds for another six months.

2

Appendix ("App.") 214. Standard noted that Brown appeared to be capable of "medium level work" that included the occasional exertion of "20 to 50 pounds of force." App. 243.

In October 2021, Brown appealed the termination of his benefits to Covestro's ERISA Review Committee ("Committee"), which denied his appeal. As part of the review and appeal, the parties and Standard obtained numerous additional reports regarding Brown's ability to work.

Brown submitted multiple medical reports. First, Brown submitted a revised report from Kim that was dated July 2021. Kim opined, inter alia, that Brown would be able to sit for six hours per day in one-hour stretches and stand for two hours per day in forty-five-minute stretches. Kim estimated that Brown would need to take a ten-minute break every 1.5 hours, would not reliably be able to complete a normal forty-hour workweek, and would likely need two to three medical absences per month. Kim also stated that Brown could lift or carry six to ten pounds for at least one-third of the day and twenty-one to twenty-five pounds for less than one-third of the day, but that he could not lift or carry more than fifty pounds. Second, Brown submitted an independent medical evaluation from Dr. Korivi that was dated August 2021. Korivi opined, in relevant part, that Brown could drive for one hour, climb two flights of stairs, and walk, sit, or stand for fifteen minutes before experiencing back pain, and that Brown could perform "jobs such as his current teaching job." App. 240.

Standard obtained a report from a vocational case manager who concluded that Brown would be able to perform several jobs while abiding by his activity restrictions

and provided a non-exhaustive list of appropriate jobs. Standard also asked Brown to complete a survey, in which he indicated that he liked to "hunt and fish." App. 502. In December 2021, the Committee retained Dr. Shipkin to review the various reports and medical records submitted thus far. Shipkin opined that Brown "would be able to engage in sedentary to light fulltime work (desk work in the range of six to eight hours a day, five days a week) where he is able to stand and stretch as needed" and that Brown was not "totally disabled." App. 543.

Brown subsequently submitted a Functional Capacity Evaluation ("FCE") that was administered in December 2021, as well as a report from Korivi commenting on the FCE. The FCE stated that Brown was unable to "work in any capacity" and struggled with "activities of daily living," including working around the house. App. 578–79. Korivi noted that the FCE indicated that Brown could not "perform at even a sedentary physical demand level." App. 566. In a January 2022 report, Shipkin reviewed both the FCE and updated report from Korivi and stated that his opinion was unchanged. That report was not shared with Brown before the appeal was decided.

Upon denying his claim, the Committee sent Brown a letter ("Denial Letter") that recapped the disability plan requirements, stated that the Committee had reviewed the various submissions, and summarized the Kim and Shipkin reports. The Denial Letter also noted that Brown was employed part-time and that, in response to Standard's inquiry as to why he had not applied for social security disability benefits as required by the Plan, Brown stated that he did not believe he was disabled.

4

Brown filed a lawsuit challenging the Committee's determination. Both parties moved for summary judgment. The Magistrate Judge issued a report and recommendation that recommended the District Court grant the defendants' motion for summary judgment and deny Brown's motion. The Magistrate Judge concluded that the denial of benefits did not constitute an abuse of discretion; that the plan administrator substantially complied with the applicable ERISA standards; and that to the extent the administrator erred, the denial was supported by substantial evidence, and remand would be futile. The District Court adopted the report and recommendation over Brown's objection. Brown timely appealed.

## II.[1]

We exercise plenary review over a district court's grant or denial of summary judgment. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). "We may affirm the order when the moving party is entitled to judgment as a matter of law, with the facts reviewed in the light most favorable to the non-moving party." Miller v. Am. Airlines, Inc., 632 F.3d 837, 844 (3d Cir. 2011) (cleaned up).

Brown first argues that the District Court should have applied a de novo standard of review because the defendants did not strictly adhere to the ERISA regulations. We are not persuaded. Indeed, we have determined that, "[w]here a plan administrator possesses discretionary authority to determine eligibility for benefits . . . we review the administrator's decision under an abuse of discretion standard." Bergamatto v. Bd. of

---

[1] The District Court had jurisdiction under 29 U.S.C. § 1132. We have jurisdiction under 28 U.S.C. § 1291.

5

Trs., 933 F.3d 257, 263–64 (3d Cir. 2019) (quotations omitted).

We have sometimes applied de novo review if a claims administrator possesses discretionary authority but did not exercise that discretion, such as when the administrator provides no reason for the denial. See Gritzer v. CBS, Inc., 275 F.3d 291, 295–96 (3d Cir. 2002). Discussing how other Courts of Appeals have approached this issue, the Court of Appeals for the District of Columbia Circuit observed that, "[a]lthough the Supreme Court has never suggested that the standard of review applied to ERISA administrators' benefits determination should change because of procedural irregularities . . . [s]ome circuits substitute *de novo* review for deferential review only when the plan administrator committed severe procedural violations." James v. Int'l Painters & Allied Trades Indus. Pension Plan, 738 F.3d 282, 283 (D.C. Cir. 2013) (per curiam) (collecting cases). Even if we were to adopt this approach, however, the Committee's procedural errors do not rise to the level of a severe procedural violation.

Brown points to two alleged procedural deficiencies. First, Brown asserts that the Denial Letter was deficient. ERISA requires a claims administrator to "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). We have explained that a denial letter adequately sets forth the specific reasons for the denial if it states that the claimant's benefits were terminated because a medical evaluation "demonstrated that he was no longer disabled . . . in light of the definition of total disability under the plan." Miller, 632 F.3d at 851 (discussing Syed v. Hercules Inc., 214 F.3d 155, 162–63 (3d Cir. 2000)). The Denial Letter similarly stated that the Committee denied Brown's claim because "he did not

6

meet the criteria for disability from Any Occupation," quoted the plan's requirement that claimants seeking long-term disability benefits be totally disabled, and identified the evidence that supported its decision. App. 195. Accordingly, we hold that the Denial Letter adequately explained the reasons for the denial.

Second, Brown argues that the Committee was required to disclose the supplemental Shipkin report before deciding his appeal because ERISA regulations require a plan administrator to disclose "any new or additional evidence considered, relied upon, or generated by . . . [any] person making the benefit determination" before "an adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(4)(i). If a report "analyze[s] evidence already known to the claimant and contain[s] no new factual information or novel diagnoses," however, the administrator need not disclose the report until the appeal is determined. Metzger v. UNUM Life Ins. Co. of Am., 476 F.3d 1161, 1167 (10th Cir. 2007). The Committee was not required to disclose the additional Shipkin report prior to deciding his appeal because it only analyzed information already known to Brown and contained no new facts or diagnoses. To the extent that the Committee did not disclose the additional report to Brown once it made its decision, its failure to do so was not a severe procedural violation. As we have observed, "[n]ot every anomaly carries great weight," and we do not require the administrator to maintain "a procedurally immaculate claim file." Noga v. Fulton Fin. Corp. Emp. Benefit Plan, 19 F.4th 264, 276 (3d Cir. 2021).

Lastly, Brown argues that the 2018 update to the ERISA regulations requires us to apply de novo review because the defendants did not adhere strictly to the applicable

7

procedural requirements. The updated regulation provides, in relevant part: "[I]f the plan fails to strictly adhere to all of the requirements of this section with respect to a claim . . . the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary." 29 C.F.R. § 2560.503-1(l)(2)(i). The District Court correctly held that the Committee did not strictly comply with ERISA, in part because it did not set forth the time in which Brown was required to challenge its decision.[2] See Mirza v. Ins. Adm'r of Am., Inc., 800 F.3d 129, 136 (3d Cir. 2015) (noting that an administrator's failure to include the time limit on seeking judicial review of an adverse benefit determination violates 28 U.S.C. § 1133).

Nevertheless, the updated ERISA regulations do not compel us to apply de novo review. The Department of Labor acknowledged that it did not intend the update "to establish a general rule regarding the level of deference that a reviewing court may choose to give a fiduciary's decision." Claims Procedure for Plans Providing Disability Benefits, 81 Fed Reg. 92316, 92327 (Dec. 19, 2016). Moreover, we have continued to evaluate procedural violations under an abuse of discretion standard after the 2018 update. See, e.g., Noga, 19 F.4th at 276.

Accordingly, we apply an abuse of discretion standard. That standard requires reversal if the administrator's decision "is without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller, 632 F.3d at 845 (quotation omitted).

---

[2] On appeal, Brown does not argue that the Committee's failure to include the time limitation is a severe procedural violation that warrants de novo review, was an abuse of discretion, or otherwise constitutes grounds to reverse the District Court's decision.

Even if an administrator's review was marked by "procedural irregularities," we may nevertheless affirm if there is an "abundance of evidence supporting the denial of the benefits claim." Noga, 19 F.4th at 279.

The record contains ample evidence supporting the administrator's determination that Brown was not totally disabled, and thus, not entitled to long-term disability benefits after eighteen months. The plan explains that an individual is only totally disabled if he cannot "work at any job" when taking into account whether reasonable accommodations are available. App. 164. Notably, Brown stated that he did not believe that he was disabled and continued to work as a teacher.

The medical reports indicate that Brown could perform light or sedentary work with reasonable accommodations. Korivi opined that Brown could work in "jobs such as his current teaching job." App. 240. Korivi's supplemental report did not rescind this opinion, but only reiterated the findings of the FCE, which offered a much more limited view of Brown's capacity than the numerous physician opinions in the record. Similarly, Kim opined that Brown would be able to sit for six hours a day in one-hour stretches and stand for two hours a day in forty-five-minute stretches. The limitations that Kim envisioned Brown would face, including a need to take short breaks and up to three medical absences per month, could be reasonably accommodated. Brown's medical reports also accord with Shipkin's opinion that Brown "would be able to engage in sedentary to light fulltime work." App. 543.

In sum, because we find that any procedural violations are not severe, and because the record contains ample evidence establishing that Brown was not totally disabled, we

9

agree with the District Court's determination and hold that the Committee did not abuse its discretion in denying Brown's claim for long-term disability benefits.

III.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of the defendants and denying summary judgment in favor of Brown.